**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **OSCAR MARTINEZ-HERNANDEZ**, | |
| Petitioner, | **Civil No.**: 17-1779 (DRD) |
| v. | Related to Criminal Case Nos. 11-241 (DRD); 99-351 (JAF); 99-352 (JAF); 01-379 (JAF). |
| **UNITED STATES OF AMERICA**, | |
| Respondent. | |

## OPINION AND ORDER

Pending before the Court is Petitioner's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* ("*Motion to Vacate*"). Civil Case No. 17-1779, Docket No. 4. Essentially, Petitioner requests this Court to set aside his guilty plea and sentence since, purportedly, his legal representatives failed to provide him adequate assistance of counsel. Opportunely, the Government filed its *Response in Opposition to Petitioner's 2255 Petition*. Civil Case No. 17-1779, Docket No. 24. And, finally, Petitioner filed his corresponding *Reply*. Civil Case No. 17-1779, Docket No. 26.

After analyzing Petitioner's numerous contentions, the Government's responses in opposition, and the extensive record for the related Criminal Cases, the Court hereby **DENIES** the *Motion to Vacate*.

### I.   Relevant Procedural Background

On June 27, 2011, a federal grand jury returned an *Indictment* against Petitioner and 113 additional Codefendants. Specifically, Petitioner was charged with four counts; that is: conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 ("Count One"); possession with intent to distribute heroin in violation of 21 U.S.C. § 841 ("Count Two");

possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 ("Count Three"); and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841 ("Count Four"). Criminal Case No. 11-241, Docket No. 3.[1] Petitioner was eventually arrested on January 25, 2012.

Initially, Petitioner was represented by Attorney Ricardo Izurieta-Ortega which filed a *Notice of Appearance* on January 25, 2012. *See* Criminal Case No. 11-241 at Docket No. 1018. However, later, Petitioner secured the legal services of Attorney Esther Castro-Schmidt ("Attorney Castro-Schmidt"). *See* Criminal Case No. 11-241, Docket No. 1225. Eventually, on May 2, 2012, Attorney Sonia Torres-Pabon ("Attorney Torres-Pabon") filed a *Notice of Appearance* and joined Attorney Castro-Schmidt as Petitioner's counsel. *See* Criminal Case No. 11-241, Docket No. 1654.

On August 3, 2012, Petitioner filed a *Motion for Change of Plea Hearing* where his counsel informed to Court that "[t]he parties have recently reached an agreement as to the underlying terms and conditions of the plea agreement", and, therefore requested that "the present case be set for a change of plea hearing". Criminal Case No. 11-241, Docket No. 2275. Said, *Motion* was granted by the Court. *See* Criminal Case No. 11-241, Docket No. 2276.

On August 8, 2020, the Government and Petitioner executed a *Plea Agreement* where he agreed to plead guilty to Count One of the *Superseding Indictment*.[2] *See* Criminal Case No. 11-

---

[1] A *Superseding Indictment* was entered September 19, 2011; however, the counts charged against Petitioner essentially remained the same. *See* Criminal Case No. 11-241, Docket No. 582.

[2] Essentially, Conte One is related to the following:

> "[I]n or about February of the year 1998, and continuing up to and until the date of the Superseding Indictment, in the La Perla Ward, San Juan, District of Puerto Rico, and within the jurisdiction of this Court, defendant [10] Oscar Martinez-Hernandez and other persons, did knowingly and intentionally, combine, conspire, and agree with each other and with diverse other persons known and unknown to the Grand Jury, to commit an offense against the United States, that is, to knowingly and intentionally possess with intent to distribute and/or to distribute controlled substances, to wit: in excess of one (1) kilogram of heroin, a Schedule I Narcotic Controlled Substance; and/or in excess of five (5) kilograms of cocaine, a Schedule II, Narcotic Drug Controlled Substance; and/or in excess of one thousand (1000) kilograms of marijuana, a Schedule I, Controlled Substance; within one thousand (1,000) feet of the real property comprising a public or private school and/or public housing project and/or a playground, as prohibited by Title 21, <u>United States Code</u>, §§ 841 (a)(1)

241, Docket No. 2346. The Government agreed to request the dismissal of the remaining Counts associated to the *Superseding Indictment*.

Moreover, the Court notes that Petitioner -along with other Codefendants- was subject to other federal indictments in the following Criminal Cases: 99-315 (JAF); 99-352 (JAF); 01-379 (JAF). As to said cases, the Government agreed that "upon acceptance of the plea, and at sentencing, it will move to dismiss [said indictments] with prejudice." Criminal Case No. 11-241, Docket No. 2346 at 5-6. Furthermore, the Court highlights that the Government agreed that Petitioner could request his sentence to "run concurrent with Commonwealth of Puerto Rico Criminal convictions for case numbers VI98G005 (Asesinato en Primer Grado – Reclusion Perpetua); VI98G006 (Asesinato en Primer Grado -Reclusion Perpetua), the same sentences being run consecutively to cases C VI98G005; C LA98G007; C LA98G00011; C LE98M002, C LE98M003, and C LE98M004. Defense may also request that this sentence be run concurrently with any time defendant may be sentenced to in the revocation proceedings in CR 94-214 (GAG)." *Id*. Finally, its worthy to note that, through the executed *Plea Agreement*, Petitioner represented "to the Court to be satisfied with defendant's counsel, Esther Castro-Schmidt, Esq., and Sonia I. Torres-Pabon, Esq., and indicates that counsel[s] ha[ve] rendered effective legal assistance." *Id*. at 8.

Afterwards, on August 16, 2021, Attorney Luis R. Rivera-Rodriguez ("Attorney Rivera-Rodriguez") filed a *Notice of Appearance* in order to join Petitioner's defense. *See* Criminal Case No. 11-241, Docket No. 2440. In turn, on August 17, 2020, Attorney Torres-Pabón filed a *Motion to Withdraw*. *See* Criminal Case No. 11-241, Docket No. 2458. On the same date, Attorney Castro-Schmidt also filed a *Motion to Withdraw*. *See* Criminal Case No. 11-241, Docket No. 2459. The

---

and 860. All in violation of Title 21, <u>United States Code</u>, § 846. Criminal Case No. 11-241, Docket No. 2346 at 12.

Court authorized Attorney Torres-Pabon and Attorney Castro-Schmidt's withdrawals. *See* Criminal Case No. 11-241, Docket No. 2537.

Eventually, Attorney Rivera-Rodriguez filed an *Emergency Motion for Continuance of Sentencing Hearing* where Petitioner requested the continuance of the sentencing hearing "in light of the recent discovery of an actual conflict of interest in which affected this Defendant's plea bargaining process and deprived the Defendant of his due process under the Fifth Amendment and Sixth Amendment right to conflict free representation". Criminal Case No. 11-241, Docket No. 3421. Specifically, Attorney Rivera-Rodriguez stated that

> [t]he defense recently discovered the shocking tale of that Defendant's previous [defense] attorney Sonia [Torres], Esq. was oblivious to the professional norms of ethical behavior and a supervising [sic] who facilitated the attorney's unethical conduct, and failed to notify the Defendant and the Court of the substantially undisputed fact that the defense attorney had been the lead prosecutor in one of [t]he cases 01-370 (JAF) included in this Defendant's plea bargain.

Criminal Case No. 11-241, Docket No. 3421, at 1-2. However, the District Court gave no credit to Petitioner's contentions and, therefore, the request for continuance was denied. *See* Criminal Case No. 11-241, Docket Nos. 3422 and 3424. Furthermore, during the Sentencing Hearing Petitioner's conflicts of interest claim was argued before the Court; nonetheless, after hearing Petitioner's counsel's arguments, the Court determined that there was no conflict present in the case and proceeded to sentence Petitioner. *See* Criminal Case No. 11-241, Docket No. 3569.

Afterwards, on March 11, 2020, the Court enter an *Amended Judgment* against Petitioner, where he was sentenced as to Count One to be imprisoned for a total term of "[t]hree [h]undred (300) months to be served concurrently with Commonwealth of Puerto Rico criminal convictions for cases number VI98G005 and VI98006, (First Degree Murder – Life in Prison), and the same sentences being run consecutively to cases CVI98G005; CLA98G007; CLA98G00011; CLE98M002; CLE98M003; and CLE98M004. Furthermore, the federal sentence is to be served

concurrently to the revocation proceedings pending in CR No: 94-214 (GAG). Time served shall be credited". *See* Criminal Case No. 11-241, Docket No. 3439, at 2.

Petitioner filed a *Notice of Appeal* before the First Circuit. *See* Criminal Case No. 11-214 at Docket No, 3467. Simultaneously, Attorney Rivera-Rodriguez filed a *Motion to Dismiss or Withdraw Plea*. *See* Criminal Case No. 11-241, Docket No. 3466. Through said *Motion* Petitioner argued that Attorney Torres-Pabon had not informed him or the Court of a "potential conflict of interest stemming from the participation as supervising U.S. Attorney in the prosecution of one of the Indictments filed against the defendant [(01-379 (JAF))]". *Id.* at 1. Petitioner argued that the Court made an "inadequate inquiry into the conflict" and that he did not waive the purported conflict. *Id.* at 6. Consequently, he requested that his indictment be dismissed or, alternatively, that the Court allowed to withdraw his plea as his due process rights under the Fifth and Sixth Amendment to conflict-free representations were infringed.

The Government filed its corresponding *Response*. *See* Criminal Case No. 11-241, Docket No. 3604. Essentially, the Government argued that "no conflict of interest occurred as [Attorney Torres-Pabon] did not participate in criminal case 01-379 (JAF). Furthermore, the defendant has suffered no prejudice through the dismissal of criminal case 01-379 (JAF), as part of the plea agreement". *Id.* at 1-2. Specifically, as to Attorney Torres-Pabon's intervention with Criminal Case No. 01-379 (JAF), the Government contested that Attorney Torres-Pabon appeared only in two instances; first, when she filed a *Motion* informing the Court of the withdrawal of an Assistant United States Attorney and when she withdrew her appearance in said case because she left the United States Attorney's Office ("USAO"). *See* Criminal Case No. 01-379 (JAF), Docket Nos. 531 and 562. On the other hand, the Government argues that Attorney Torres-Pabon requested First Assistant United States Attorney María Dominguez ("FAUSA María Dominguez") to

"review the individual files and ascertain [whether] she had participated in any of the cases during her tenure at the USAO". *Id*. at 3. FAUSA María Dominguez determined that no conflict of interested was present since Attorney Torres-Pabón's interventions in Criminal Case No. 01-379 (JAF) was limited to "perfunctory matter[s]" which were undertaken as part of her supervisory responsibilities at the USAO.

Furthermore, the Court entered an *Order* on April 25, 2013 where it ordered Attorney Torres-Pabon and Attorney Castro-Schmidt to reply to Petitioner's *Motion to Dismiss*. *See* Criminal Case No. 11-241, Docket No. 3562. In compliance with said *Order*, both Attorneys filed individual motions in compliance. *See* Criminal Case No 11-241, Docket Nos. 3613 and 3614. Through said motions, it was informed to the Court of the efforts made by Attorney Torres-Pabon to assess whether any conflict existed by accepting to be Petitioner's legal representative. To that end, it was explained that Attorney Torres-Pabón did not file her *Notice of Appearance* before she had the opportunity to inform Petitioner that her name appeared on Criminal Case No. 01-379 (JAF) and before discussing the matter with FAUSA Maria Dominguez. *See* Criminal Case No 11-241, Docket Nos. 3613 at 3; Docket No. 3614 at 6.

On the other hand, both Attorneys provided details as to the discussions held with the Government as to Criminal Cases No. 01-379 (JAF) and 11-241 (DRD). Specifically, the Attorneys explained that, considering the weight of the evidence in the Governments possession and Petitioner's criminal history, they concluded that "[s]hould the government prevail at trial in either of the two mentioned cases, a term of incarceration for life was a distinct possibility consecutive to the over 200 years he is facing in state court […] Based on all the factors which were made known to him, it is my professional opinion that he made a willing and intelligent decision to plead guilty" in Criminal Case No. 11-241. *Id*. at 5-6.

Finally, Attorney Torres-Pabon directly contested the allegations made by Attorney Rivera-Rodriguez in the *Motion to Dismiss*. To that end, Attorney Torres-Pabon argued that by stating that she was "lead prosecution attorney" in Criminal Case No. 01-379, Attorney Rivera-Rodriguez had made false representations to the Court since her participation in said case was limited to filing 2 motions.[3]

Furthermore, she explained that the purported conflict was discussed with Attorney Rivera-Rodriguez months prior to Petitioner's request for continuance of the sentencing hearing where Attorney Rivera-Rodriguez informed that just "recently" he discovered potential conflicts in the case. As to said discussion, Attorney Rivera-Rodriguez informed that the "prepared an electronic communication to [Attorney Rivera-Rodriguez] on November 26, 2012 confirming the conversation and detailing the steps taken to ensure that there was no conflict of interest and that the matter was discussed with [Petitioner]. The undersigned went as far as providing Counsel Rivera with the notes of the meetings with Mr. Martinez, which reflected that the conflict inquiry as discussed with him. The undersigned's notes were attached to [Dkt 3466] however, Counsel Rivera conveniently omitted the undersigned's cover e-memorandum date November 26, 2012." *See* Criminal Case No. 11-241, Docket No. 3614 at 4-5.

Pending the disposition of the *Motion to Dismiss*, Attorney Rivera-Rodríguez requested authorization to withdraw as Petitioner's legal representative. *See* Criminal Case No. 11-241,

---

[3]As to said motions, Attorney Torres-Pabon explained that:

> In reviewing the dockets of the federal cases [Criminal Cases No. 99-351 (JAF); 99-352 (JAF); 01-379 (JAF); and 11-241 (DRD)] the undersigned found two informative motions filed under her name. First, as the Chief of the Criminal Division, the undersigned performed the administrative task of informing the court in Crim. No. 01-379, two years after the case had been closed administratively by the Court, of the withdrawal of AUSA David Rivera from the case. *See*, Dkt 517. The other informative motion filed under the undersigned's name, is a motion informing the court that the undersigned had left the USAO's office. *See*, Dkt. 562.

*See* Criminal Case No. 11-241, Docket No. 3614 at 5.

Docket No. 3618. On June 7, 2013, Petitioner's current legal representative, Attorney Castro-Lang filed its corresponding *Notice of Appearance*. *See* Criminal Case No. 11-241, Docket No. 3662.

Although the *Motion to Dismiss* was pending, Petitioner then filed a *Nunc Pro Tunc Motion to Set Aside Judgment, Annul All Proceedings and Dismiss the Indictments*. *See* Criminal Case No. 11-241, Docket No. 3757. Petitioner requested the Court to substitute the *Motion to Dismiss* for the *Nunc Pro Tunc Motion*, as it included supporting documents -various of which are included as exhibits to the instant *Motion to Vacate*- and additional conflict of interest arguments -which are essentially restated in the instant *Motion to Vacate*- that purportedly supported his conflicts of interest contentions.

Essentially, the additional conflict of interest argument included in this *Nunc Pro Tunc Motion* is based on Petitioner's interpretation that during her time at the USAO, Attorney Torres-Pabón "prepared" Mr. Orlando Rosa Rodríguez, which was to be used by the Government as a witness against Petitioner. In light of this, Petitioner contested that Attorney Torres-Pabon was subject to yet another conflict of interest since she would have been obliged to cross-examine the witness she "prepared". The Government filed its *Response* and, finally, Petitioner filed its *Reply*. *See* Criminal Case No. 11-241, Docket Nos. 3886 and 3917.

Eventually, the Court entered an *Opinion and Order* where Petitioner's *Nunc Pro Tunc Motion* was denied. *See* Criminal Case No. 11-241, Docket No. 4210. First, the Court determined that Attorney Torres-Pabon "did not 'personally' nor 'substantially' participate in Criminal Case No. 01-379 as Chief of the Criminal Division […] the record clearly evinces that Sonia Torres' involvement was perfunctory in nature, making two appearances relating to her official responsibilities as head of the division" *Id.* at 11. Second, this Court recognized that as a result of Attorney Torres-Pabon's efforts to ascertain whether any conflict of interest existed, "FAUSA

8

Domínguez informed Atty. Torres that there was no conflict of interest, as she had not personally participated in any of Defendant's previous cases." *Id*. at 14.[4] Also, the Court was hard-pressed to believe "that [Petitioner] did not knowingly and purposefully retain two former AUSA's because of the prior work and connections at the U.S. Attorney's Office." *Id*.

On the other hand, the Court noted that Attorney Torres-Pabon and Attorney Castro-Schmidt's representation was fruitful since it enabled Petitioner -through the execution of the *Plea Agreement*-[5] to evade the possibility of a sentence of life imprisonment. Pursuant to the above, the District Court concluded that "there was no conflict of interest in [Attorney Torres-Pabon's] representation of [Petitioner]." *Id*. Hence, the Court found that -under the standards set by the Fifth Amendment, the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984)- Attorney Torres-Pabon did not provide Petitioner ineffective assistance of counsel.

Unsatisfied, Petitioner then filed a *Motion for Reconsideration*. *See* Criminal Case No. 11-241, Docket No. 4230.[6] Pending said *Motion*, the First Circuit entered a *Judgement* with regards to Petitioner's Appeals (Case No. 13-1450 and 15-1254). The First Circuit considered the District Court's denial of Petitioner's pre-sentencing conflict of interest argument. To that end, the First Circuit affirmed the District Court's rejection of the claim and stated that "**[t]he district court properly concluded that there was no conflict and that the defendant was not prejudiced by his formed counsel's representation**." Criminal Case No. 11-214, Docket No. 5474 (emphasis provided). It's critical to note that, in order to reach this conclusion, the First Circuit determined

---

[4] The Court also determined that neither Attorney Torres-Pabon nor the USAO violated Department of Justice's procedures by not requesting an opinion form an Ethics Official prior to Attorney Torres-Pabon's appearance as Petitioner's legal representative. *See* Criminal Case No. 11-241, Docket No. 4210 at 17.

[5] As to Petitioner's argument that other Codefendants received more favorable plea agreements, the Court stated that it was "wholly irrelevant, as the Court gauges the extent of each defendant's involvement in the conspiracy and their prior criminal history individually". *See* Criminal Case No. 11-241, Docket No. 4210 at 17.

[6] The *Motion for Reconsideration* was later denied, pursuant to the First Circuit's *Judgment*. *See* Criminal Case No. 11-214, Docket No. 5515.

that Attorney Torres-Pabón's involvement in Criminal case 10-379 (JAF) was limited to the filing of two informative motions; thus, her involvement was merely tangential. Furthermore, the Circuit Court concluded that: (a) Petitioner did not demonstrate how this involvement created a conflict of interest in Criminal Case No. 11-241; (b) that he "knew all along" that Attorney Torres-Pabon had worked for the Government and; (c) that "he hired her at least in part for that reasons, and Torres said that she explained her involvement in case number 01-379 to him before agreeing to represent him." *Id*. at 17.

However, it's imperative to note that the First Circuit determined that the District Court did not have jurisdiction to consider Petitioner's *Motion to Dismiss* nor *Nunc Pro Tunc Motion*, since Petitioner's appeal was still pending when both *Motions* were resolved. Consequently, the First Circuit invalidated the referenced *Opinion and Order*.

## II.   <u>Parties' Positions as to Arguments Raised in *Motion to Vacate*</u>[7]

### A.   *The Purported Ineffective Assistance of Counsel Provided by Attorney Torres-Pabon and Attorney Castro-Schmidt.*

Petitioner contends that Attorney Castro-Schmidt and Attorney Torres-Pabón provided ineffective assistance of counsel for various reasons. First, Petitioner believes that his Sixth Amendment right to a speedy trial was invalidated and the referenced attorneys failed to file a motion to dismiss on said grounds. Specifically, Petitioner contends that the Government took too long in executing his arrest in 2012, considering that there were 3 *Indictments* against him that were entered between 1999 and 2001. To that end, Petitioner argues that he should have been

---

[7] The Court notes that most of the arguments included in the *Motion to Vacate* were already presented to the Court through Petitioner's *Motion to Dismiss* and *Nunc Pro Tunc Motion*. *See* Criminal Case No. 11-241, Docket No. 3466 and 3757. Furthermore, the Court highlights that it already denied said arguments when it entered the *Opinion and Order* at Criminal Case No. 11-241, Docket No. 4210. However, as previously stated, because the First Circuit ruled that said *Opinion and Order* was entered without jurisdiction, the Court will now consider Petitioner's arguments once again.

arrested earlier, taking into account that the Government knew he was in Venezuela since 1999 and had information pertaining to his alias and where he was residing in said foreign country. Petitioner reasons that the motion to dismiss was not filed since the Government's failure to arrest him fell on Attorney Torres-Pabon, who was the head of the Criminal Division of the USAO from 2002-2006.

Second, Petitioner bases his ineffective assistance of counsel claim on a set of issues that purportedly gave rise to a conflict of interests as to Attorney Castro-Schmidt and Attorney Torres-Pabon. Particularly, Petitioner proposes that Attorney Torres-Pabon "was personally involved in the development, interviews and cooperation provided by Orlando Rosa Rodriguez". Civil Case No. 17-1779, Docket No. 3 at 2. Furthermore, Petitioner claims that Mr. Rosa-Rodriguez "was a potential Rule 404 (b) witness against [him] in Cr. 11-241 (DRD)". *Id*. at 3. In light of said propositions, Petitioner contends that this situation created a conflict of interest with Attorney Torres-Pabon. Since Attorney Torres-Pabon "prepared" Mr. Rosa-Rodriguez while she was head of the Criminal Division at the USAO, Petitioner believes that if "he went to trial in any of [the referenced] cases, [Attorney Torres-Pabon] would have to undermine the credibility of her own cooperating witness and the government could bring out her representations to the Court, while she had been AUSA, that he had been truthful while cooperating". *Id*. at. 9.[8] Consequently, Petitioner condemns that Attorney Torres-Pabon "never mentioned to [him] about the conflict of interests this situation created, nor did she ever inform the Court about the potential conflict so that it would hold a hearing to determine whether she should remain as his counsel". *Id*. at 4-5.

---

[8] The Court notes that the inception of Petitioner's contention as to Mr. Rosa-Rodriguez -apparently- were not formulated by him or his legal representatives, but by a "paralegal" by the name of "Papo Rosado". *See* Civil Case No. 17-1779, Docket No. 3 at 6 ("[Petitioner] reviewed the discovery in his case with paralegal Papo Rosado, which **advised him** that attorney Sonia Torres had a conflict of interest that was affecting his representation since she had developed one of the witnesses that was supposed to testify against him […]") (emphasis provided). This scenario is problematic as a paralegal is not a licensed attorney and, thus, has no authority to provide legal advice.

Third, Petitioner believes that the Government provided him with "the worst plea that was negotiated in Cr. 11-241 (DRD)". *Id*. at 5. Petitioner believes the Government took advantage of Attorney Torres-Pabón's "divided loyalties" -which stemmed from the referenced purported conflicts of interests- in order to strike said "unfavorable" plead. *Id*. at 5-6.[9]

In response, the Government contends that no conflicts of interest existed with regards to Attorney Castro-Schmidt and Attorney Torres-Pabon, for various reasons. First, the Government highlights that Attorney Torres-Pabon "took two steps to assure that she could represent Martinez". Civil Case No. 17-1779, Docket No. 24 at 1. As to the matter, the Government explains that Attorney Torres-Pabon "reviewed the docket to ensure that she had not been directly involved as an AUSA in any of Martinez's prior indictments". *Id*. at 2. The Government highlighted that when executing said review, attorney Torres only found "two non-substantive informative motions concerning the assignment of the case that she had filed on behalf of the United States". *Id*. On the other hand, the Government contends that, at that time, Attorney Torres-Pabon also requested FAUSA María Dominguez "to review the government's case files and identify potential conflicts". *Id*. To that end, the FAUSA María Dominguez found that no conflict existed which would preclude attorney Torres from representing Petitioner. Finally, the Government avers that "Torres discussed

---

[9] Petitioner also suggest that "[h]e plead guilty to an indictment the government could not prove beyond a reasonable doubt his guilt at trial". Civil Case No. 17-1779, Docket No. 3 at 6; *see, also, Id*. at 10 ("Instead they developed a strategy to try to mask the conflict by entering into a plea agreement where the government would dismiss the indictments where the conflict was obvious and have [Petitioner] plead guilty in Cr. 11-241 (DRD) (Docket No. 2346), the only indictment filed against him after Torres had left the U.S. Attorney's Office, a case that the government could not prove beyond a reasonable doubt against him since they lacked the evidence that [Petitioner] trafficked  in drug in La Perla, since he lived in Venezuela since the year 1999").

Now, the Court must highlight that said contention is **merely based on Attorney Castro-Lang's appreciation of the trial transcripts of Criminal Case No. 11-241 (DRD)**. *Id*. at note No. 6. However, various documents in the record discredit his appreciation. Particularly, the Court highlights that Attorney Castro-Schmidt and Attorney Torre-Pabon's replies to Petitioner's *Motion to Dismiss* describe the evidence in the Government's possession against him. *See* Criminal Case No. 11-241, Docket Nos. 3613 and 3614. In light of said evidence, Petitioner agreed to a stipulated set of facts in the *Plea Agreement* that clearly defined his role in the conspiracy which he plead guilty to. *See* Criminal Case No. 11-241, Docket No. 2346 at 12-14. The Court finds that this hollow assertion, merely supported by Attorney Castro-Lang's review of a transcript, is wholly insufficient to support Petitioner's allegation.

the content of these motions with Martinez prior to accepting his request for legal representation". *Id.*

On another note, as to the matter of Mr. Rosa-Rodriguez, the Government's first highlights that he is only related to Criminal Cases Nos. 99-352 (JAF) and 01-397 (JAF) which were dismissed -with prejudice- as part of Petitioners *Plea Agreement* in Criminal Case No. 11-241 (DRD). Furthermore, The Government argues that Petitioner did not provide evidence that Attorney Torres-Pabon "was even aware that [Mr.] Rosa-Rodriguez was a potential witness at the time she negotiated the plea agreement". *Id.* at 6. Further, the Government informs that by May 2012 Attorney Torres-Pabon was already negotiating the *Plea Agreement* and the letter which Petitioner uses in an attempt to justify that Mr. Rosa-Rodriguez was going to be a government witness is dated June 12, 2012. To that end, the Government reasons that "Petitioner's elaborate accusation concerning Torres's representation is without merit, evidence, and is completely unfounded based on the record before the Court.". *Id.*

Finally, as to Petitioner's "unfavorable" *Plea Agreement*, the Government stated that "Attorney Torres-[Pabon] and Attorney Castro-Schmidt were] able to negotiate an extremely favorable plea agreement for the petitioner who's criminal history and activity includes convictions for two murders, four federal indictments for conspiracy to distribute narcotics, international flight, and the importation of narcotics during his time on the run". *Id.*

### B. The Government's Purported Enabling Actions to Attorney Castro-Schmidt and Attorney Torres-Pabon's "Conflict of Interest".

Petitioner contends that the Government, "[b]y taking upon itself the adjudication that Torres did not have any conflict in her representation of [Petitioner], the government acted improperly [and, therefore,] subverted Defendant's Sixth Amendment right to conflict-free representation". Civil Case No. 17-1779. Docket No. 3 at 29. In essence, Petitioner suggest that

by determining that there was no conflict, the Government somehow committed prosecutorial misconduct. Specifically, Petitioner's position is that the Government knew there was a conflict of interest and this created and "obligation to inform the Court[;] yet they kept quiet allowing the conflicted representation con continue". *Id* at 31.

### C. *The Purported Ineffective Assistance of Counsel Provided by Attorney Rivera-Rodriguez.*

Finally, Petitioner contends that Attorney Rivera-Rodriguez also provided ineffective assistance of counsel since he purportedly failed "to raise in a timely manner the conflicts of interests that existed in Torres and Castro-Schmidt's legal representation, the correct factual basis for said conflicts and in falling to move to withdraw the plea agreement in a timely fashion". Civil Case No. 17-1779, Docket No. 3 at 34. "Although he was aware at that time of the conflicts that existed and the specific reasons for its existence, Rivera did nothing to alert the Court". *Id*.

To counter Petitioner's contention, the Government avers that Petitioner made "no showing that counsel's performance was deficient and prejudiced him in any way." Civil Case No. 17-1779, Docket No. 24 at 7. The Government highlighted that Attorney Rivera-Rodriguez: (1) attempted - at least- on 2 occasions to have petitioners guilty plea withdrawn; (2) requested additional time to investigate the conflict mater; and (3) was the first of Petitioner's counsel to raise the issue before the District Court. Finally, the Government questions Petitioner's assertions that, from the outset of his representation, Attorney Rivera-Rodriguez was fully aware of all the theories that Petitioner has brought before the Court throughout the years as to the purported conflict of interest in the instant case. To that end, for example, the Government rationally contends that "[i]f Attorney Rivera was unaware of the existence of Rosa-Rodriguez and Torre's role in his cases he could not have possibly brought it to the attention of the district court". *Id*.

### III.   <u>Legal Standard</u>

#### A.  *Motions Under 28 U.S.C. § 2255 (generally)*

Pursuant to 28 U.S.C. § 2255, a federal prisoner may petition to vacate, set aside, or correct his or her sentence by showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." However, "[r]elief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." <u>Blake v. United States</u>, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted); *see*, *also*, <u>Knight v. United States</u>, 37 F.3d 769, 772-73 (1st Cir. 1994).

#### B.  *Ineffective Assistance of Counsel*

The Sixth Amendment of the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." Certainly, pursuant to said principle, the Sixth Amendment guarantees the right to "effective counsel". *See* <u>Strickland v. Washington</u>, 466 U.S. 668, 687–88 (1984); <u>United States v. Ortiz</u>, 146 F.3d 25, 27 (1st Cir.1998). Nevertheless, a petitioner bears a "very heavy burden" in his attempt to have his sentence vacated premised on an ineffective assistance of counsel claim. *See* <u>Argencourt v. United States</u>, 78 F.3d 14, 16 (1st Cir.1996); <u>Lema v. United States</u>, 987 F.2d 48, 51 (1st Cir.1993).

Consequently, in order to succeed on a claim of ineffective assistance of counsel under 28 U.S.C. § 2255, Petitioner has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness,[10] and (2) there is a reasonable probability that, but for

---

[10] To satisfy the first prong of the *Strickland* test, a petitioner "must show that 'in light of all the circumstances, the identified acts or omissions [allegedly made by his trial attorney] were outside the wide range of professionally competent assistance.'" <u>Tejeda v. Dubois</u>, 142 F.3d 18, 22 (1st Cir.1998). Consequently, a petitioner must overcome

counsel's error, the result of the proceedings would have been different.[11] *See* Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (*citing* Strickland v. Washington, *supra*, 674; Argencourt, *supra* at 16; Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994); López-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990) (*citing* Strickland, 466 U.S. at 687). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, *supra*, at 687–88. However, it has been recognized that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Its worthy to note that *Strickland* also applies to representations outside of the trial setting, which would include plea bargains, sentence and appeal. *See* Missouri v. Frye, 132 S. Ct. 1399, 1408-10, 182 L. Ed. 2d 379 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); Hill v. Lockhart, 474 U.S. 52, 57 (1985); Bonneau v. United States, 961 F.2d 17, 20-22 (1st Cir. 1992); United States v. Tajeddini, 945 F.2d 458, 468-69 (1st Cir. 1991)(abrogated on other grounds by Roe v. Flores-Ortega, 528 U.S. 470 (2000)); Panzardi-Álvarez v. United States, 879 F.2d 975, 982 (1st Cir. 1989); López-Torres v. United States, 876 F.2d 4, 5 (1st Cir. 1989) (abrogated on other grounds by Bonneau v. United States, 961 F.2d 17 (1st Cir. 1992)).

---

the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Smullen v. United States, 94 F.3d 20, 23 (1st Cir.1996). Finally, its noteworthy that a Court must review counsels actions deferentially and should make every effort "to eliminate the distorting effects of hindsight." Argencourt v. United States, 78 F.3d 14, 16 (1996); *see, also,* Burger v. Kemp, 483 U.S. 776, 789 (1987).

[11] To satisfy the second prong of the *Strickland* test, "[t]he 'prejudice' element of an ineffective assistance [of counsel] claim[,] also presents a high hurdle. 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Argencourt v. United States, *supra*, 16; Campuzano v. United States, 976 F.Supp.2d 89, 99 (D.P.R. 2013). To that end, a petitioner must affirmatively "prove that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different." Knight v. United States, 37 F.3d 769, 774 (1st Cir.1994)  That is, if petitioner succeeds in showing deficiencies in his legal representation, then he must conclusively establish that said deficiencies operated a real prejudice against her in the criminal proceedings. *See* Strickland v. Washington, *supra*, 694.

### C.  Conflicts of Interest as Basis for Claims of Ineffective Assistance of Counsel.

In order to effectively assert a claim for ineffective assistance of counsel, based on a conflict of interest, a petitioner is required to show: (1) an "[a]ctual conflict of interest", <u>Mickens v. Taylor</u>, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); and (2) "how his lawyer's conduct was 'actually affected' by the alleged conflict of interest." <u>Familia-Consoro v. U.S.</u>, 160 F.3d 761, 767 (1st Cir. 1998). *See, also,* <u>Rijo v. United States</u>, 2017 WL 5157756, at *5 (D.P.R. Nov. 6, 2017).[12] It is noteworthy that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance". <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 350 (1980); *see*, *also*, <u>Bucuvalas v. United States</u>, 98 F.3d 652, 656 (1st Cir.1996).

To prove an actual conflict of interest, "a defendant must show that (1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interest or loyalties." <u>United States v. Soldevila-Lopez</u>, 17 F.3d 480, 486 (1st Cir. 1994) (quoting <u>Guaraldi v. Cunningham</u>, 819 F.2d 15, 17 (1st Cir. 1987)). *See*, *also*, <u>Cruz Vazquez v. United States</u>, 2019 WL 1055034, at *3 (D.P.R. Mar. 5, 2019). Said division of loyalties cannot be "mere theoretical". *See* <u>Mickens v. Taylor</u>, 535 U.S. 162, 171 (2002); <u>United States v. Soldevila–López</u>, 17 F.3d 480, 487 (1st Cir.1994) ("theoretical or merely speculative conflict of interest" does not constitute a Sixth Amendment violation").

Finally, for the conflict of interest to effectively support a claim for ineffective assistance, "not only does Petitioner need to prove inadequate representation, but he must also establish a

---

[12] Therefore, if a Petitioner satisfies the prongs, he does not need to prove prejudice under *Strickland* for his conflict of interest claim to prevail. *See*, *e.g.*, <u>Cuyler v. Sullivan</u>, 466 U.S. 335, 349-350 (1980); <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 73 (1st Cir. 2009).

causal link between the actual conflict of interest and counsel's decision to forgo a particular strategy. Mere speculation is not enough." Cruz Vazquez v. United States, 2019 WL 1055034, at *3 (D.P.R. Mar. 5, 2019); see, also, United States v. Burgos-Chaparro, 309 F.3d 50, 53 (1st Cir. 2002); United States v. Hernandez-Lebron, 23 F.3d 600, 606-607 (1st Cir. 1994)).

## IV.   Analysis

### A. *Conflicts of Interest with regards to Attorney Torres-Pabon and Castro-Schmidt.*

First, the Court clarifies that, in this analysis, the set of issues that Petitioner brought before the First Circuit as basis for his conflicts of interest claims are not being considered, as they cannot be contested by Petitioner at this stage.[13] That being said, the analysis then must be focused on the matter involving Mr. Rosa-Rodriguez and the purported conflict of interest that his "presence" -in Criminal Cases No. 99-352 (JAF) and 01-379 (JAF)- gave rise thereto.

Petitioner contends that Attorney Torres-Pabon secured the *Plea Agreement* in order to evade the purported conflict of interest that would arise if Mr. Rosa-Rodriguez were to be called as a Government witness. The first problem with this contention is his lack of evidence to demonstrate that Mr. Rosa-Rodriguez was -**in fact**- to be called as a witness in any of the Criminal Cases related to Petitioner. The Court notes that there is absolutely no evidence -nor support on the record- to even suggest that Mr. Rosa-Rodriguez was to be called as a witness in Criminal Case No. 11-241 (DRD). On the other hand, the evidence provided by Petitioner in an attempt to convince this Court that Mr. Rosa-Rodriguez was to be called as a witness in Criminal Cases No.

---

[13] The First Circuit, as well as this District Court, have determined that a Petitioner cannot attempt to re-litigate issues that have already been raised and adjudge through direct appeal. *See, e.g.*, Singleton v. United States, 26 F.3d 233, 240 (1st Cir.1994) (citations omitted) ("Section 2255 motions may not be used as vehicles to re-litigate issues that were raised on appeal absent extraordinary circumstances, such as intervening change of law or newly discovered evidence."); Conley v. United States, 323 F.3d 7, 22 (1st Cir. 2003) ("Claims that previously have been addressed on direct review, however, may not be readjudicated collaterally under § 2255 absent equitable considerations, such as actual innocence or cause and prejudice."); Bauzo-Santiago v. United States, 435 F. Supp. 3d 357, 377 (D.P.R. 2020); De-La-Cruz v. United States, 865 F. Supp. 2d 156, 161 (D.P.R. 2012); Alicea-Torres v. United States, 455 F. Supp. 2d 32, 54 (D.P.R. 2006).

99-352 (JAF) and 01-379 (JAF) is certainly not definitive.[14] Consequently, the alleged "fact" that the Government was to call Mr. Rosa-Rodriguez as a witness is nothing more than a hypothetical scenario, at best. Certainly, this is insufficient to support Petitioner's theory. *See*, *e.g.*, United States v. Sotomayor-Vazquez, 249 F.3d 1, 16 (1st Cir. 2001) ("As for the possibility that Daniels might have been called as a material witness to Ornelas's perjury, this is little more than speculation on Kourí's part. *See Soldevila–López,* 17 F.3d at 487 ("theoretical or merely speculative conflict" insufficient for Sixth Amendment violation) (internal quotations omitted). Not only was Daniels never called as a witness, but the Government never suggested that he would be called. Moreover, Kourí has not alleged how any theoretical possibility that Daniels might be called as a witness affected his behavior as counsel.")

On the other hand, should the Court entertain Petitioner's unsubstantiated "factual" scenario, it must be noted that he has only provided a hypothetical scenario of the "conflict of interest" that would arise if Mr. Rosa-Rodriguez was to be called as a Government witness in Criminal Case No. 99-350 (JAF) and 01-379 (JAF). The Petitioner suggest that said scenario would lead Attorney Torres-Pabon to "undermine the credibility of her own cooperating witness and the government could bring out her representations to the Court, while she had been AUSA, that he had been truthful while cooperating". Civil Case No. 17-1779, Docket No. 3 at. 9.[15]

---

[14] Petitioner provided a letter -related to Criminal Case Nos. 99-352 (JAF) and 01-379 (JAF)- sent by the Government to Attorney Castro-Schmidt on June 4, 2012, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, where it was informed that the Government possessed an interview of Mr. Rosado-Rodriguez that involved Petitioner. Although it is certainly possible that Mr. Rosa-Rodriguez could be called as a Government witness, the statements in this letter are insufficient to establish that it was actually going to happen.

On the other hand, as correctly alleged by the Government, said letter arrived on June 4, 2012, that is, various weeks after Attorney Torres-Pabon had already engaged in talks with the Government in an attempt to resolve Petitioner's pending Criminal Cases. *See* Civil Case No. 17-1779, Docket No. 3-23. This fact alone makes Petitioner's contention that the *Plea Agreement* was secured because Attorney Torres-Pabon wanted to "evade" a scenario where she had to cross-examine Mr. Rosa-Rodriguez, highly unlikely.

[15] The Court notes that this issue is commonly examined in a very different context from the instant case; that is, conflict of interest claims that involve the cross examination of a witnesses commonly arise in the context of "successive" or "joint" representation. *See*, *e.g.*, United States v. Bellille, 962 F.3d 731, 743 (3d Cir. 2020) ("We have

Petitioner's theory is essentially dependent on a sworn statement provided by Attorney Marlene Aponte who stated that she "represented defendant Orlando Rosa Rodriguez a/k/a Oly in Cr. 98-009 (CCC) and Cr. 97-82 (SEC)". Civil Case No. 17-1779, Docket No. 3-10. From the get-go, the Court finds that said sworn statement is inapposite as Attorney Aponte's knowledge seems to be circumscribed to cases that are unrelated to the Criminal Cases against Petitioner. Furthermore, even if the Court were to entertain the idea that Attorney Aponte's knowledge of Attorney Torres-Pabon's intervention with Mr. Rosa-Rodriguez is even relevant; her statement as to Attorney Torre-Pabon's involvement with Mr. Rosa-Rodriguez is limited to stating that she "participated in some of his debriefing and in his sentences related to the cooperation he provided the government. AUSA Sonia Torres also discussed with me my former client's testimony, cooperation and case". *Id*. Hence, the Court finds that Petitioner's elaborate reasoning does not find support in such an ambiguous retelling of facts.

Finally, Petitioner's contention that the reason for the procurement of the *Plea Agreement* was for Attorney Torres-Pabon to evade the -inexistent- "conflict of interest" is debunked by the pleadings contained in the record of Criminal Case No. 11-241 (DRD). The Court highlights that the reasons for the pursuit of the *Plea Agreement* were provided by Attorney Castro-Schmidt and Attorney Torres-Pabon in their former appearances before the Court. It comes as no surprise that

---

previously held that such a conflict of interest prohibits a representation, despite waiver by all parties, where counsel has 'divided loyalties due to concurrent or prior representation of another client who is a co-defendant, a co-conspirator, or a *government witness*.'"); United States v. Moscony, 927 F.2d 742, 749 (3d Cir. 1991). However, the Court highlights that even in instances where "successive" or "joint" representation has been found, a conflict of interest might not necessarily be present. *See*, *e.g.*, Theodore v. State of N.H., 614 F.2d 817, 823 (1st Cir. 1980). Moreover, some Courts have recognized that even if a conflict of interest is found, a defendant has the right to waive said conflict. *See*, *e.g.*, United States v. Basciano, 384 F. App'x 28, 34 (2d Cir. 2010); *United States v. Perez*, 325 F.3d 115, 125–27 (2d Cir.2003).

Here, there is no "successive" or "joint' representation between Attorney Torres-Pabon and Mr. Rivera-Rodriguez. Therefore, Petitioner's arguments cannot even the heightened standards outlined in the aforementioned case law. Consequently, the Court finds that, in the context of the instant case, the likelihood that a conflict of interest stems from this issue is even more improbable.

the legal strategy pursued had no relation whatsoever to Petitioner's conflicts of interest theory.

As to this matter, Attorney Castro-Schmidt stated the following:

> After we entered our legal representation in all the pending cases, we met with the prosecutor assigned to these cases: AUSA George A. Massucco-La Taif. An extensive proffer of evidence was made as to Mr. Martinez-Hernandez' alleged participation in the present case. From the reports of investigation which contained the debriefings of the potential cooperators, it became apparent that the government had at least three cooperating individuals who were available to testify at trial had the defendant opted to so proceed. Also, we were provided the reports of investigation of the debriefings made of the cooperating individuals which contained allegations as to the alleged involvement of the defendant as a supplier and transporter of drugs. Also, the government's evidence reflected that the defendant was seen in the possession of both handguns and assault rifles during the years 1993 and 1998. The extensive proffer made by the government, as well as the reports of investigation which consisted of approximately six reports with a total of sixty-five pages (65) provided in discovery were throughly discussed with the defendant. Also, provided in this case as discovery were the notes and transcription of the interview with inmate, Josean Reyes-Pagan at MDC Guaynabo which allegedly implicated Mr. Martinez-Hernandez in an illegal activity at MDC Guaynabo.  There is no doubt in my mind that the defendant was well aware of the evidence against him in the present case.
>
> On June 4, 2012, we were provided with a discovery package in criminal case number 99-352 (JAF) and 01-379 (JAF) which consisted of an audio tape recording and a DEA-6 ROI of Orlando Rosa-Rodriguez in relation to the alleged participation of Mr. Martinez-Hernandez in the drug trafficking activities at La Perla during the conspiracy charged in 99-352 JAF which extended from on or about April 1998 to July 1998. The government represented that the testimony of cooperators was available in this case, as well as the recordings. Likewise, in criminal case number 01-379(JAF) report of investigations were provided which reflected that Mr. Martinez-Hernandez and Wilfredo Andujar-Guzman were allegedly involved in coordinating the importation of 780 kilograms of cocaine into Puerto Rico on November 1, 2000. These reports also reflected the alleged participation of the defendant in the possession of eight (8) kilograms of cocaine and approximately $500,000.00. According to the testimony of the potential government witness, charges were not filed against the defendant because he fled the scene. According to the government's investigation, the money was to be turned over to the defendant so that he could pay members of Andujar's drug trafficking organization. The conspiracy in the superseding indictment filed on November 6, 2001, in criminal case number 01-379, at Count One charged that on or about August 1, 2000, Mr. Martinez-Hernandez, along with twenty other co-conspirators for the conspiracy to import into the United States and the possession with intent to distribute approximately 2,776.6 kilograms of cocaine. The defendant was also charged at Count Seven that on or about October 27, 2000, to on or about November

1, 2000, the defendant aided and abetted by others, knowingly and intentionally imported 780 kilograms of cocaine into the United States from Venezuela. A second superseding indictment was filed on November 15, 2010, to clarify the true name of defendant number 12 in Count One, Felipe Rodriguez de la Rosa, whose true name is Jose Figueroa Agosto AKA Junior Capsula. Recorded conversations were provided as to the charged conspiracy in 01-379 (JAF) and the same were heard at MDC Guaynabo with our client. In one of the conversations held on November 1, 2000, at approximately 9:03 a.m., according to the government's investigation, Andujar after having been informed earlier in the morning as to a couple of missing kilos in the 780 kilo load, allegedly speaks to Mr. Martinez-Hernandez concerning the persons that were sent to do the job. Andujar appears to be inquiring allegedly from the defendant if he knows the individuals who Omar sent to do the job. This tape recorded conversation , as well as another conversation recorded on February 16 2001, which appeared to be drug related , were heard by the defendant and discussed with him. Likewise, the reports of investigation provided in relation to this conspiracy were discussed at length with the defendant who also provided his input.1 The government represented that it had at least three and possibly four cooperators in 01-379 (JAF). The defendant was well aware of the risks he faced should he have decided to proceed to trial in the cases pending against him, particularly in 01- 379 (JAF) and 11-241 (DRD).2 Considering his criminal history and the amounts of drugs charged in at least two of the pending cases, should the government prevail at trial, in either of the two mentioned cases, a term of incarceration for life was a distinct possibility consecutive to the over 200 years he is facing in state court for convictions in two unrelated matters. Based on all the factors which were made known to him, it is my professional opinion that he made a willing and intelligent decision to plead guilty.

Criminal Case No. 11-241, Docket No. 3613 at 4-8. On the other hand, as to this matter, Attorney

Torres-Pabon provided a statement, under penalty of perjury, where she stated the following:

Mr. Martinez had a 1992 state firearms conviction; a 1994 federal drug conviction; and two 1999 state convictions for murder. In addition, Mr. Martinez was also facing revocations proceedings for the federal conviction for failure to report to the U.S. Probation Officer justice. Based on the above criminal history [Petitioner] would probably be considered a career offender under the U.S. Sentencing Guidelines[.]

Further, the government had already announced that if he proceeded to trial they would file an Information pursuant to Section 851 which would expose [Petitioner] to a minimum sentence of twenty (20) years. If convicted in Crim. No. 11-241 (DRD), and the government proceeded in Crim. No. 01-371 (JAF) he would then be exposed to a minimum sentence of life imprisonment, that if they elected to file Information.

Faced with the above scenario, both I and attorney Castro jointly and separately explained to Mr. Martinez the government's evidence and the options of proceeding to trial and/or negotiating a plea agreement with the government. *After reviewing the* government's discovery, its proffer, and the respective indictments, I identified and researched a number of potential issues. I later discussed with [Petitioner] the outcome of the research; and the viability of success in filing the pertinent motions.

*Only after* reviewing the government's evidence, identifying and researching the pertinent legal issues, and discussing the same with [Petitioner], did we commence serious discussions with the government as to a potential plea agreement. [Petitioner] instructed me and Counsel Castro to engage in plea bargaining conversations with the government. [Petitioner's] proposed terms were submitted to the government. The government rejected [Petitioner's] proposal as it insisted on a sentence of thirty years. After various discussions and meetings with the government and with [Petitioner] it was agreed among the parties that [Petitioner] would enter a plea of guilty in the instant case. The terms of the agreement are accurately represented in the Plea Agreement signed by the parties on August 7, 2012. The terms were discussed with [Petitioner] in the Spanish language, his mother tongue. I repeatedly advised [Petitioner] that he had the option of proceeding to trial and the government had to present its witnesses and the evidence it had proffered.

Criminal Case No. 11-241, Docket No. 3614-1 at 5-6.

The Court finds that the statements provided by Attorney Castro-Schmidt and Attorney Torres-Pabon reflect the actual reasons behind the Attorneys' legal strategy that eventually secured the *Plea Agreement* executed by Petitioner in Criminal Case No. 11-241 (DRD). Consequently, the Court dismisses Petitioner's conjectures pertaining to purported "conflicts of interests", "divided loyalties" and his farfetched theory that the execution of the *Plea Agreement* was a "strategy to try to mask [a] conflict".

On another note, as previously concluded in the past *Opinion and Order*, the Court finds that the *Plea Agreement* was extremely beneficial to Petitioner.[16] Petitioner contends that it was the "worse" *Plea Agreement* in Criminal Case No. 11-241 (DRD); however, the Court believes that Petitioner is evidently ignoring the circumstances which underlie his prior seriously violent

---

[16] Nothing in Petitioner's *Motion to Vacate* moves the Court to vary its appreciation of the benefits of the *Plea Agreement*.

criminal history, the multiple federal indictments that he was facing -that were dismissed as a result

of the execution of the *Plea Agreement*-, the risks associated with taking any -or all- of the Criminal

Cases against him to trial, and the fact that through said *Plea Agreement* Petitioner evaded the

possibility of a sentence of life imprisonment.[17]

     In light of the above, the Court determines that neither Attorney Castro-Schmidt nor

Attorney Torres-Pabon provided ineffective assistance of counsel to Petitioner under the standard

set by *Strickland* since their performance did not "fall below an objective standard of

reasonableness".[18]

### B. Ineffective Assistance of Counsel with Regards to Attorney Torres-Pabon and Castro-Schmidt Purported Failure to Pursue Petitioner's Speedy Trial Claim.

     As previously stated, Petitioner contends that Attorney Castro-Schmidt and Attorney

Torres-Pabón failed to file a motion to dismiss his indictments in Criminal Cases Nos. 99-351

(JAF), 99-352 (JAF) and 01-379 (JAF).[19] The main problem with said argument is that Petitioner

is considering procedural issues that might have been present in other criminal cases to contest the

resolution of Criminal Case No. 11-241 (DRD). To make matters worse, the cases he references

in an attempt to support his contention were dismissed -with prejudice- pursuant to the *Plea*

---

[17] In *Hill v. Lockhart*, the Supreme Court explained that, "[i]n the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases]. The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 58–59 (1985). Accordingly, a petitioner would have to show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Toro–Mendez v. United States, 976 F.Supp.2d 79, 86 (D.P.R. 2013). Pursuant to the above, this criterion is also not met in the instant case.

[18] Since there is no conflict of interest that stems from Mr. Rosa-Rodriguez's involvement in the dismissed criminal cases, the Court finds that Petitioner's contention as to the Government's actions to further the conflict of interest equally lack merit and should not be afforded any consideration.

[19] The Court notes that Petitioner did not involve his initial counsel -who represented him for various months prior to Attorney Castro-Schmidt and Attorney Torres-Pabon in Criminal Cases Nos. 99-351, 99-352 and 01- 379- in this claim, although he did not file a motion to dismiss on these grounds. The Court finds that this suggests that Petitioner is cherry picking who to pin this alleged "failure" to; this, is telling as to the merits of his contention against Attorney Castro-Schmidt and Attorney Torres-Pabon.

*Agreement* Petitioner managed to secure as a result of the work of Attorney Castro-Schmidt and Attorney Torres-Pabon's legal representation.

On the other hand, the Court notes that the *Plea Agreement* that ended the four federal Criminal Cases against Petitioner was achieved only three months after Attorney Castro-Schmidt and Attorney Torres-Pabon assumed his legal representation. As previously summarized, Attorney Castro-Schmidt and Attorney Torres-Pabon determined -after analyzing the facts of the cases and the evidence in the Government's possession- that the correct legal strategy was to secure a plea agreement that would potentially eliminate the possibility of a sentence of life imprisonment. *See* Criminal Case No. 11-241 Docket Nos. 3613 and 3614. It is certainly possible that Attorney Castro-Schmidt and Attorney Torres-Pabon's decision to not file a motion to dismiss was in line with the procurement of the referenced *Plea Agreement*. To that end, it's worth remembering a passage from *Strickland* where the Supreme Court stated that

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'.

Strickland, *supra*, at 689; Walker v. Medeiros, 911 F.3d 629, 633 (1st Cir. 2018)("This standard is "highly deferential" and thus we must "indulge a strong presumption that ... under the circumstances, the challenged action 'might be considered sound trial strategy.'"). Considering the aforesaid, particularly, the dismissal of Criminal Cases No. 99-351 (JAF), 99-352 (JAF) and 01-379 (JAF), and the "highly deferential" standard under *Strickland*, Petitioner's argument is insufficient to invalidate the presumption that Attorney Castro-Schmidt and Attorney Torres-Pabon executed a sound trial legal strategy in this case.

**C.** *Ineffective Assistance of Counsel with Regards to Attorney Rivera-Rodriguez.*

As previously stated, Petitioner argues that Attorney Rivera-Rodriguez provided ineffective assistance of counsel because he failed to raise all of Petitioner's conflicts of interest claims in a timely manner. After concluding that there is no conflict of interest in this case, the Court finds that Petitioner's contention as to Attorney Rivera-Rodriguez are meritless. However, The Court wants to highlight additional reasons that invalidate Petitioner's claim.

First, the Court finds that Petitioner's contention is dependent on the "fact" that Attorney Rivera-Rodriguez knew the basis for **all** of his conflicts of interest claims when he became Petitioner's legal representative. However, Petitioner's cannot support this "fact". The *Motion to Vacate* reveals that a third-party was involved in the exchanges between Attorney Rivera-Rodriguez and Petitioner. To that end, Petitioner stated that

> Papo Rosado recommended that he hire [Attorney River-Rodriguez] so that the conflict of interest issue could be raised before the District Court. (Exh. 2) [Petitioner] followed his recommendation and, on 8/16/12, after [Petitioner] plead guilty, counsel Rivera entered an appearance on his behalf. (docket No. 2440) Counsel Rivera, **who was acting through Papo Rosado**, knew all of the factual basis for the conflict of interest issue yet crossed his hands and failed to raise the issue in a timely manner.

*See* Civil Case No. 17-1779, Docket No. 3 at 7 (emphasis provided). Consequently, this statement suggests that Petitioner depended on Papo Rosado to inform Attorney Rivera-Rodriguez of "all the factual basis for the conflict of interest issue". However, Petitioner has not provided the Court with evidence that Papo Rosado did in fact provide Attorney Rivera-Rodriguez with said "factual basis" from the get-go. Consequently, the Court cannot conclude that when Attorney Rivera-Rodriguez assumed Petitioners legal representation he was fully aware of the entire "factual basis" in which Petitioner premises his conflicts of interest claims.

However, what can be corroborated through the record of Criminal Case No. 11-241 (DRD) is that, before presenting Petitioner's conflicts of interest claims, Attorney Rivera-

Rodriguez contacted Attorney Torres-Pabon to discuss the purported "factual basis". *See* Criminal Case No. 11-241, Docket No. 3614. Furthermore, it is clear that Attorney Rivera-Rodriguez presented the matter before the Court on various occasions; which included an open court discussion during the Sentencing Hearing. *See* Criminal Case No. 11-241, Docket No. 3569. *Petitioner* has not provided arguments -nor evidence- that would lead this Court to invalidate the presumption that Attorney Rivera-Rodriguez followed a sound legal strategy. And, finally, given that Petitioner's conflicts of interest claims are meritless, it is impossible for Petitioner to meet *Strickland's* second prong; that is, but for counsel's error, the result of the proceedings would have been different.

## V.  <u>Conclusion</u>

Pursuant to the above, Petitioner's *Motion to Vacate* is hereby **<u>DENIED</u>**.

It is further ordered that no certificate of appealability be issued in the event that the petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional or statutory right within the meaning of 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on August 20, 2020.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge

27